IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 04 CR 778 |
| v. | ) | Judge Virginia M. Kendall |
| | ) | |
| WILLIAM KURCZODYNA | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO STAY
RESTITUTION ENFORCEMENT PROCEEDINGS**

Defendant, **William Kurczodyna,** by and through his attorneys, the **Law Office of Damon M. Cheronis**, pursuant to the Due Process and Effective Assistance of Counsel Provisions of the Fifth and Sixth Amendments to the United States Constitution, 28 U.S.C. § 3013, and other authority cited herein, respectfully requests the Court enter an order staying or limiting further restitution enforcement proceedings based on undue hardship.

In support of this motion, Mr. Kurczodyna, through counsel, submits the following[1]:

**I.      Background**

1.      On August 21, 2004, Mr. Kurczodyna was charged along with 21 other co-defendants with various counts of fraud, including mail fraud in violation of 18 U.S.C. § 1341, for his role in a fraud scheme centered on submitting false and fraudulent auto insurance claims related to Auto City Rebuilders. Dkt. # 1.

---

[1] Mr. Kurczodyna, through counsel, intends to supplement this motion with an affidavit supporting the factual assertions contained herein.

2. After pleading guilty, on April 9, 2007, Mr. Kurczodyna was sentenced to a term of incarceration of a year and a day, three years of supervised release, and to pay a restitution amount of $1,307,515.00. Dkt. # 443. The restitution order was imposed jointly and severally upon Mr. Kurczodyna and certain co-defendants, and the schedule of payments required that Mr. Kurczodyna pay 10% of his net monthly income until the judgment is satisfied. Dkt. # 443.

3. In order to satisfy the outstanding balance of $753,336.44, on November 19, 2018, the government filed a motion for turnover order asking the Court to direct the third party's holding IRA accounts of Mr. Kurczodyna's to turn over certain funds from those accounts to satisfy Mr. Kurczodyna's outstanding restitution obligation. Dkt. # 750.

4. On November 26, 2018, the Court entered an order granting the government's motion and the relief requested therein. Dkt. # 752.

5. That order was most recently stayed in order to allow Mr. Kurczodyna until February 14, 2019 to file a response, if any. Dkt. # 766.

6. For the reasons that follow, Mr. Kurczodyna, through counsel, now requests that the Court enter an order staying further restitution enforcement proceedings based on undue hardship.

II. Discussion

7. The Debt Collection Procedure Act, 28 U.S.C. § 3001 *et seq.*, provides district court's with the equitable authority to grant a hardship waiver to further enforcement of restitution obligations. Specifically, § 3013 provides:

> The court may at any time on its own initiative or the motion of any interested person, and after such notice as it may require, make an order denying, limiting, conditioning, regulating, extending, or modifying the use of any enforcement procedure under this chapter.

8. Federal courts across the country have recognized that this statute vests the authority in district judges "to shield defendants from efforts to collect restitution judgments if the collection would cause unreasonable annoyance, expense, embarrassment, disadvantage or other prejudice." *United States v. Sayyed*, 186 F. Supp. 3d 879, 883 (N.D. Ill. 2016) (Feinerman, J.) (internal quotations omitted); *see also United States v. Ogburn*, 499 F.Supp.2d 28, 30-32 (D.D.C. 2007); *FTC v. Nat'l Bus. Consultants, Inc.*, 376 F.3d 317, 321 (5th Cir. 2004); *United States v. King*, 2012 WL 1080298, *6 (E.D. Pa. 2012); *United States v. Urso*, 2009 WL 2999521, *5 (N.D. Tex. 2009); *United States v. Lawrence*, 538 F. Supp. 2d 1188, 1195 (D.S.D. 2008); *United States v. Mayes*, 2007 WL 3001670, *1 (D.S.D. Oct. 10, 2007); *United States v. Kaye*, 93 F. Supp. 2d 196, 198-99 (D. Conn. 2000).

9. Nearly all of the concerns articulated above apply here. Through its most recent motion for a turnover order, the government is seeking to liquidate various Fidelity Investment IRA accounts belonging to Mr. Kurczodyna and his wife, Marcia, totaling $1,137,270, in order to satisfy the remaining $ 753,336.44 of his $1,307,318.00 restitution obligation that was imposed jointly and severally with a significant number of his former codefendants. *See* Dkt. # 443, 750.

10. Ever since his release from custody, Mr. Kurczodyna has struggled to find work, carrying out various odd jobs in order to make ends meet. The goal for him and his family was always to do whatever was necessary in order to make it to retirement. At that point, they could rely on their savings and live out their elder years—not in any sort of luxury, but at least in comfort and security.

11. Both Mr. Kurczodyna and his wife Marcia are getting to the point where retirement is no longer an aspiration, but mandatory. Marcia, at 65, manages activities for an active senior living community, and estimates that, at most, she will able to do so for another 3-5 years. Mr. Kurczodyna

himself estimates that based on his skill set, his felony conviction, and his equally advancing age, his employment prospects will dwindle in a similar time frame.

12. On that point, it is worth noting that for nearly a decade after his release, Bill was forced to perform janitorial work, as there was no other available employment given his federal felony conviction, and this demanding labor has taken a significant toll on him physically. Specifically, Bill reports the physical labor since his release has had a significant detrimental effect on his knees and his hips.

13. In any event, both Bill and Marcia are nearing retirement, and even if either could hold on for longer than expected, it is unlikely that both could do so. But given their limited income, and the need for both of their salaries, absent the security of their retirement accounts, their financial situation is likely to prove ruinous.

14. There are also fairness concerns at issue here. Mr. Kurczodyna and counsel understand the entire point of imposing restitution orders jointly and severally is to prioritize making the victim whole at the expense of any undue harm to one of the wrongdoers themselves. That said, we will respectfully note that there is nonetheless some level of injustice in satisfying this joint restitution obligation through almost exclusively seizing funds belonging to Mr. Kurczodyna, especially given his limited culpability in relation to others. *See, e.g., Paroline v. United States*, 134 S.Ct. 1710 (2014) (recognizing, *inter alia*, the lack of a cause of action for contribution for federal restitution judgments); *see also* Dkt. # 468, Osinski Plea Agreement (admitting, *inter alia*, that he and others faked automobile accidents "acting at his direction," that he and his company would receive the payments and pay out a portion to his co-schemers, and that Mr. Kurczodyna processed claims for Osinski and was compensated at Osinski's discretion). On this point, while counsel is not aware

4

of the precise figures each defendant has contributed to date, counsel understands that a significant majority of the restitution paid to date was satisfied by Mr. Kurczodyna, as opposed to any of his codefendants. And again, this is all the more disconcerting given Mr. Kurczodyna's relative culpability in relation to many of his other codefendants.

15. Also with regard to fairness, it is worth noting that although the Kurczodyna's worked hard and invested throughout their lives to save this money, a significant portion of the money was inherited by Marcia alone from her family, and but for her decision to commingle those funds in a joint IRA, would have been unreachable by the government. *See United States v. Novak*, 476 F.3d 1041, 1063-64 (9th Cir. 2007); *United States v. Whalen*, 459 F. Supp. 2d 800, 818 (E.D. Wis. 2006). Marcia, of course, had no involvement in this case aside from the fact that her spouse was charged amongst the 22 individuals charged with participating in the instant scheme.

16. Alternatively, it logically follows that if the Court has the power to effectively halt enforcement proceedings entirely, it could choose to limit them--§ 3013 does in fact use the phrase "limiting, conditioning, regulating, extending, or modifying the use of any enforcement procedure under this chapter." As such, Mr. Kurczodyna, through counsel, would respectfully ask the Court to consider limiting the enforcement manner, in any appropriate manner.

### III. Conclusion

17. Based on the foregoing, Mr. Kurczodyna, through counsel, respectfully requests that the Court enter an order staying further restitution enforcement proceedings based on undue hardship.

                    Respectfully submitted,

                    /s/ Damon M. Cheronis
                    **Damon M. Cheronis**

                    /s/Ryan J. Levitt
                    **Ryan J. Levitt,**
                    Attorneys for Defendant.

**Law Office of Damon M. Cheronis**
140 S. Dearborn Street Suite 411
Chicago, IL 60603
(312) 663-4644
damon@cheronislaw.com
ryan@cheronislaw.com

**CERTIFICATE OF SERVICE**

I, Damon M. Cheronis, hereby certify that on February 14, 2019, I electronically filed the foregoing **Motion to Stay Enforcement Proceedings** with the Clerk of the U.S. District Court for the Northern District of Illinois, Eastern Division, by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ Damon M. Cheronis
Damon M. Cheronis
Law Office of Damon M. Cheronis
140 S. Dearborn Street Suite 411
Chicago, Illinois 60603
(312) 663-4644
damon@cheronislaw.com
