UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | |
| WILLIAM KURCZODYNA, ) | |
| ) | No. 04 CR 778-5 |
| Defendant, ) | |
| ) | Judge Kendall |
| FIDELITY SERVICE COMPANY, INC, ) | |
| FIDELITY MANAGEMENT TRUST ) | |
| COMPANY, ) | |
| ) | |
| Third Party Citation Respondents ) | |

**UNITED STATES' RESPONSE TO
KURCZODYNA'S MOTION TO STAY ENFORCEMENT**

## Introduction

The United States moved for turnover orders of defendant William Kurczodyna's Fidelity investment accounts. In response, Kurczodyna moved to indefinitely stay enforcement of his restitution. He does not contest that his victim is entitled to the funds, but he seeks to thwart his *victims'* recovery based on the hardship that *perpetrator* Kurczodyna would allegedly face. However, Kurczodyna will retain over $600,000, even after he satisfies his restitution. The kind of hardship that a court might recognize to excuse a restitution obligation does not exist when, as here, the defendant would retain more than half-a-million dollars, has other assets, and is employed. The court should order the turnover.

## Background

William Kurczodyna defrauded about $1.3 million from his employer by knowingly processing fraudulent insurance claims. Superseding Indictment and Plea Agreement, Dkts. 205, 386. He pleaded guilty and was sentenced to repay his employer, American Family Insurance

jointly and severally with his co-defendants who also caused American Family's loss. Judgment, Dkt. 443. The court sentenced him to year and one day of incarceration for the $1.3 million fraud. *Id*. at 2. With the entry of judgment, a lien arose on all Kurczodyna's property and rights to property under 18 U.S.C. § 3613(c). To enforce the judgment, the United States issued citations to discover assets against Fidelity Investments and Northwestern Mutual Life Insurance in 2007, and Computershare Investor Service and National City Bank n/k/a PNC Bank in 2009, and moved for a turnover order in 2010. Motion for Turnover Order, Dkt. 653. The United States voluntarily withdrew that motion pending the sentencing of Kurczodyna's co-defendants, but the transfer freeze remained in place. Dkt. 665. The accounts rose substantially in value over the course of the next eight years, and the United States renewed its motion for a portion of the accounts in 2018. Motion for Turnover Order, Dkt. 752.

## Argument

### I. Kurczodyna Will Not Experience a Hardship

Kurczodyna will not experience the kind of legal hardship that might allow the court to provide relief from the restitution obligation if this court orders that his nonexempt assets be paid to the victim of his crime. Kurczodyna has over $1,300,000 and will retain at least $600,000 if the United States' motion is granted. It is not credible for Kurczodyna to claim hardship with a net worth over $600,000, and the present ability to earn income. Most criminal defendants that come through this courtroom could not fathom having that much wealth. William Kurczodyna is no different than them, and he should be treated as such.

#### A. Hardship Standard

The court's equitable authority to grant a hardship waiver is found in section 3013 of the Federal Debt Collection Procedure Act. 28 U.S.C. § 3013. That discretion however, is not

unfettered. *United States v. Lawrence*, 538 F.Supp.2d 1188, 1195 (D.S.D. 2008). *Lawrence* recognized that FDCPA § 3013 is taken verbatim from New York law (*i.e.*, N.Y. Civ. Prac. L & R § 5240) concerning post-judgment enforcement procedures. *Lawrence*, 538 F.Supp.2d at 1195. As *Lawrence* suggests, it is proper to rely on cases interpreting New York law to provide a guide for interpreting the court's authority under § 3013. The purpose of FDCPA § 3013 is to "prevent unreasonable annoyance, expense, embarrassment, disadvantage or other prejudice to any person or the court." *Lawrence*, 538 F.Supp.2d at 1195 (*quoting Pax v. Long Island R.R.*, 241 A.D.2d 486, 487); *United States v. Sayyed*, 186 F. Supp. 3d 879, 883 (N.D. Ill. 2016); *United States v. Sherrod*, No. 11 CR 479-2, 2016 WL 6582231, at *2 (N.D. Ill. Nov. 7, 2016).

"[O]nly the gravest circumstances warrant . . . equitable modification in the face of a valid judgment" under the FDCPA § 3013. *Midlantic Nat. Bank/North v. Reif*, 732 F.Supp. 354, 357 (E.D.N.Y. 1990) (interpreting New York's identical provision, § 5240). The *Reif* court found hardship under the statute to mean that a garnishment could not be ordered, for example, "without taking food out of the mouths of the debtor's children." *Id.* (*citing Carpenter v. Delge*, 49 N.Y.S.2d 702 (1944)). "[M]odification comes, if at all, only to a debtor showing substantial hardship and an unfair burden in meeting obligations." *Id.* at 357. Similarly, courts have found that "grave circumstances" do not exist if the defendant is earning a living, has a place to live, and does not have any mental health issues. *United States v. Sayyed*, 186 F. Supp. 3d 879, 883 (N.D. Ill. 2016); *United States v. King*, 2012 WL 1080297 (E.D. PA. 2012); *United States. v. Hall*, 760 F.Supp. 2d 146, 150 (D. ME. 2011). In short, a garnishment creates a hardship where it prevents a debtor from meeting necessary, life-sustaining expenses. Kurczodyna has not presented a case of "grave circumstances" that would justify modifying the turnover orders to alleviate hardship, nor could he.

B.     **Application of the Hardship Test**

Although section 3013 allows the court to exercise discretion to limit execution in grave circumstances, the facts of this case do not warrant it here. Kurczodyna will not experience "grave circumstances" if a portion of his wealth is turned over to the victim of his crime. Kurczodyna has a net worth of at least $1,300,000. Motion, *Affidavit*. Even after his victim would be completely compensated from the consequences of his fraud, Kurczodyna would still have *at least* $600,000. Affidavit, ¶ 8. Kurczodyna also indicates he also owns real estate, but it is unknown how much his real estate is worth. Affidavit ¶ 5 (indicating two mortgage expenses). Any equity in the real estate not only adds to his wealth, but is a nonexempt asset that his victim is entitled to recover from. Further, Kurczodyna and his wife had a 2018 gross income of over $100,000. Kurczodyna Affidavit, Dkt. ¶¶ 5 and 7. There is no reason to believe their income would decrease substantially in the coming years, before their respective retirements. A base of $600,000, plus savings from several more years of earnings is more than most criminal defendants even dream of retiring with. Kurczodyna will have sufficient assets to meet his basic needs and avoid the grave circumstances required to exercise the court's hardship discretion.

On top of having sufficient assets, Kurczodyna's income exceeds his monthly budget. First, the budget includes an improper expense for a "hardship" analysis. He included $1,800 towards his credit card debt as a monthly expense. Affidavit ¶ 5. The credit card debt is not reduced to a judgment and it does not have priority over the United States' perfected judgment lien, which encumbers all of his assets. The United States and the victim of his crime, should not be forced to take a backseat to allow Kurczodyna to repay his other creditors. Further, Kurczodyna's income is more than sufficient to meet his expenses. Affidavit ¶ 5. The eight identified expenses total $5,270 per month (not including his $5,000 per year for "legal fees") or

$63,240 per year. *Id*. The couple reportedly have net income of $72,860 per year. *Id*. at ¶¶ 5 and 7. This results in surplus of about $10,000 per year. There can certainly be no grave circumstances when an individual's income exceeds expenses.

Further, other elements that could cause hardship are not present in this case. Kurczodyna does not have any reported mental health or substance abuse problems, he has a place to stay, and a means to pay for it. Courts have found that hardship does not exist when those factors are met. In *United States v. King*, 2012 WL 1080297 (E.D. Penn. 2012), the court ordered the garnishment of all of King's retirement funds. He was 66 years old and would no longer be permitted to practice as a doctor. However, he had a place to live, received Social Security Income, was able to work at that time, and had no mental health or substance abuse issues. *Id.* at 6. Similarly, in *United States v. Hall*, 760 F.Supp.2d 146, 150 (D. Me. 2011), the court found that the defendant could work a minimum wage position, had a place to live, and had no mental health or substance abuse problems. *Id.* at 150. The court reflected that the defendant's "circumstances are actually better" than most criminal defendant's upon leaving confinement, and the court granted the United States' motion in its entirety. Kurczodyna has a place to live, a means to pay for it ($600,000 and earned income), does not have any reported mental health or substance abuse issues, and is capable of working for several more years.

## II. Fairness Concerns

Granting the United States' motion is the fair result. Kurczodyna alleges that there would be "fairness concerns," if the United States' motion is granted, because of his "relative culpability" for the crime and his previous contribution to the payment of the joint and several restitution debt. Motion, Dkt. 773 ¶ 14. However, Kurczodyna was more culpable than all but one of his co-defendants. He was the lynchpin in the scheme involving American Family Insurance.

American Family's $1,307,318 loss was primarily caused by the actions of Witold Osinski and William Kurczodyna. American Family can recover the bulk of its loss from *only* those two individuals, because they were the only defendants held liable for its full loss. Status Report, Dkt. 567, Exhibit A. Eleven other defendants were also sentenced to repay American family. However, their indebtedness only ranged from about $32,000 to about $102,000. *Id.* Only about $675,000 of the restitution owed to American Family was owed by another defendant in addition to Osinski and Kurczodyna.[1] Which means that about $630,000 of the restitution was only owed by Osinski, who was the plan's mastermind, and Kurcozdyna, who participated in every fraudulent transaction involving American Family. *See* Status Report. Additionally, Osinski is liable for about $435,000 that Kurczodyna is not liable for. *Id.* If the United States recovers funds from Osinski in the future, those funds will likely be applied to his other debt first through the application of the involuntary payment rule. *Muntwyler v. United States*, 703 F.2d 1030, 1032 (7th Cir. 1983). Forcing Kurcozdyna to pay his restitution, which he can afford to pay, and for which he is likely the only source for the victim to recover, is not unfair.

There is also no fairness concern regarding the source of the funds in the Fidelity account. Kurczodyna argues that a "significant portion" of the money in the Fidelity accounts was inherited by "Marcia alone" from her family. Dkt. 773 ¶ 15. He does not argue how much, when the inheritance was received, or who it was received from. In contrast, we know that Kurczodyna inherited assets from Pauline Kurczodyna that are held by Fidelity and have a significant value. Motion, Dkt. 750 Exhibit A; Motion, Dkt. 505 Exhibit A. The only evidence presented indicated that it was Kurczodyna who inherited money, not his wife. Regardless, Kurczodyna has ownership

---

[1] Defendant Jerzy Matysik's joint and several restitution judgment is not included in this status report. He was sentenced almost a year later and ordered to pay American Family Insurance $46,534. Judgment, Dkt. 596 at 3.

in all of the accounts, and a legal right to all of the funds. The United States' lien encumbers all of his rights, and therefore, his rights in the account. Compelling a criminal defendant who has the means to pay his restitution, and will remain wealthy after he pays is restitution, is not unfair.

## Conclusion

For the foregoing reasons, the court should grant the United States' motion for turnover order.

        Respectfully submitted,

        JOHN R. LAUSCH, Jr.
        United States Attorney

        By: s/ Scott D. Heffron
            SCOTT D. HEFFRON
            Assistant United States Attorney
            219 South Dearborn Street
            Chicago, Illinois 60604
            (312) 886-4190
            scott.heffron@usdoj.gov